# BALTIMORE CITY COURT.

Filed May 14, 1923.

CATHERINE HAYS GRIFFITH
VS.
HARRY M. BENZINGER AND ANOTHER, EXECUTORS.

*Isaac Lobe Straus* and *J. Paul Schmidt* for plaintiff.

*H. H. Dinneen* for defendant.

BOND, CARROLL T., J.—

The one serious question on the motion for a new trial, as I see it, is whether a man who to the end of his days transacted the business told of in this case could be found incapable of executing a will, except upon a mistaken standard of competency.

The caveator produced testimony by physicians acquainted with the testator (who was a physician himself) that he was afflicted with chronic progressive chorea, and that he had been so afflicted for about twenty years. This disease was described as a nervous affection which inevitably brings on mental decay after a period of years. Incidents of the man's later life, testified to on behalf of the caveator, fitted in with the expectation of mental decay from such a disease, showed epileptic fit, extreme disordered movements of the body, and disregard of conventions in the care of his clothing and in his bodily functions to such a degree that one of the alienists inferred that his condition in respect to these things approximated that of a young infant. Improper approaches to women in his later years were testified to, and a book of writings by him contains some silly, ribald rhymes and jokes here and there. And other incidents aiding to prove decrepitude and incapacity were testified to. On the hypothetical question recounting all this testimony, five alienists gave their opinions that for some years before his death, or before the

execution of the will, the testator must have been incapable of executing a valid deed or contract. A few non-expert witnesses expressed similar opinions. I still think the testimony given up to the close of the caveator's testimony in chief contained sufficient foundation for that opinion evidence and for a verdict to that effect.

The executors, or caveators, did not present expert opinions. While they presented a few non-expert opinions that the testator was capable of executing a valid deed or contract, for the most part they rested the defense on testimony that he actually did execute valid deeds or contracts, and attended to a large number of business details clearly and efficiently to the last. The degree of opposition in the testimony on the one side and the other is unusually great. One of the alienists for the caveator, Dr. Brush, when on cross-examination some of the testator's business transactions later testified to were detailed to him, said "if he did these things it is a most remarkable exception to what would be expected" from the statement of conditions and symptoms in the hypothetical question which the doctor had answered; and another, Dr. Dunton, said the transactions would be inconsistent with the conditions described in that question; that he wouldn't know the same man. The testator had a large estate, and to the end he attended to his own business, with the ordinary assistance of brokers, attorneys and bank clerks. He had several bank accounts, some of them savings accounts, others checking accounts, and he made his deposits and withdrawals, and had his interest entered on his books, all in a manner which the various tellers describe as ordinary and not such as to cause remark. He often withdrew to a private alcove or booth and worked on his papers. He had three or more safe deposit boxes, and kept his securities in them; and when coupons fell due he went to the one box or the other which contained the particular bonds, took them out and cut off the coupons. And after cutting off the coupons he either deposited or cashed them in an ordinary way. The various vault keepers who had served him for some years saw nothing remarkable in this particular customer, except that he had some nervous motion. Close up to the time of making his will, the testator purchased securities, always buying those of high grade, asking his broker for recommendations, sometimes accepting them and sometimes rejecting them. In some instances he held the choice under advisement. In 1920, when solicited by his friend, Mr. Schiaffino, to purchase some bonds newly issued by the Italian Government, he purchased one for fifty dollars, held the question of further purchase for investigation, and subsequently volunteered to purchase more. He bought some shares of stock in 1921 from the vice-president of one of his banks, Mr. Yakel, after discussion as to their value, and gave orders as to the names to go on the certificates and the stock book of the issuing corporation. He frequently advised with one of the officials of the Colonial Trust Company, where he had an account, and he had attorneys whom he consulted, and whom he had prepare his will. The attorneys are named executors under the will and no testimony is given by them, but all others with whom he had regular business saw nothing in the testator to distinguish him to any marked extent from the ordinary run of business customers. Finally, in the last two months of his life he bought a house and lot, entering into the contract of purchase, and completing the purchase in the ordinary manner. A little over a month before making his will he made the settlement by drawing a check on the Colonial Trust Company for $10,243.35 and paying it over for his deed. And in the last month he had a garage built on the rear of the lot, entering into such contracts as that work required. Other business activities were testified to, but this statement will probably give a sufficient review of the testimony on the point for the defense. It is all largely documented, and its truthfulness, so far as it goes, has not been questioned. Some of the alienists produced by the caveators, when this state of facts was suggested to them on cross-examination, said it would not modify their estimate of the testator's capacity, or lack of capacity, because the activities were routine, and such as a defective mind could go through with.

No extraordinary capacity is required for making a will. The process is as simple as that of making a gift, except when the testator under-

takes to map out the course of his property through future contingencies; and then he raises difficulties for a lawyer rather than for himself. If he understands what property he has to give, and can make his choice of the person or persons to whom he wants to give it, he can also make a valid will. It is laid down as a guide for us that anybody who can make a valid deed or contract—however odd or eccentric he may be, however afflicted—if he has sufficient intelligence left to make a valid deed or contract, he is able to make his will, and having made it is entitled to have it stand and be carried out as his will. This is no great measure of capacity. Many commonplace business transactions demand higher capacity, the number of unsuccessful business men of sound mind is some evidence of that. But in a serious judicial proceeding it is difficult to have the will tested by such a simple measure. The special solemnity of an act in contemplation of death is likely to be translated into special demand upon the intelligence; but it is not such. The alienists who testified in the case had this mistaken conception of the task of making a will; some of them thought the making of a will required decidedly more capacity. They may have had more complex wills in mind. The rule remains, however, that only the capacity to make an ordinary deed or contract is necessary, and that was the test submitted to the jury in the issue. It is possible that the issue can have been answered according to the test which it submitted?

I think we must say that a man who can select or reject suggested securities, who can purchase a house and lot, make the settlement, have a garage erected, to say nothing of keeping up personal attention to his investments, his interest coupons, his interest on deposits, his deposits themselves and his withdrawals—a man who can do all those things would seem to have at least as much capacity as is required to make a will, if not more. I do not see how we can escape the conclusion that he must have been held incompetent by a standard above that required by law.

The jury that tried this case was composed of able, careful men, and I do not think they were misled into deciding merely upon a choice between the parties represented at the trial table, or upon any other false ground, as so frequently happens in contests over wills. I can well see how they might come to their conclusion on the case as it was presented to them on the evidence, and there is no assurance of a different verdict upon another trial. And a new trial will consume two weeks of the time of a crowded court. Moreover, requiring a case to be tried twice is an admission of failure which ought seldom be necessary. Barring accidents, we ought to be able to furnish a settlement of a controversy in one trial. But retrial is the only provision for avoiding miscarriages in some cases, and it has to be ordered without hesitation when the situation makes it seem necessary.

For the reasons stated above I have concluded that it is necessary that the verdict now entered should be set aside and the case retried.